In the Matter of John and Carol CLAASSEN, Debtors.

**FIRST NATIONAL BANK & TRUST CO. OF BEATRICE NEBRASKA, Plaintiff,**

v.

**John and Carol CLAASSEN, Defendants.**

Bankruptcy No. BK85–3208.
Adv. No. 87–169.

United States Bankruptcy Court, D. Nebraska.

Nov. 22, 1988.

**194**

Paul Conley.

James Nelson.

## MEMORANDUM OPINION

JOHN C. MINAHAN, Jr.,
Bankruptcy Judge.

This adversary proceeding came before this court for trial upon an Objection to Discharge (Fil. # 1) under 11 U.S.C. §§ 523 and 727, filed by the First National Bank & Trust Co. of Beatrice, Nebraska (the "Bank") against the debtors, John David Claassen and his wife Carol Ann Claassen. The Bank and the debtors entered into a stipulation of facts which was received in evidence. The stipulation of facts and the exhibits thereto are incorporated herein. The facts set forth in the stipulation are supplemented by the findings of fact set forth herein.

## FINDINGS OF FACT

The Bank sold 34 Holstein cows for $25,000.00 to John Claassen, Robert Claassen and Claassen's Linc–Side Farms, a Nebraska partnership. The Bank financed the purchase price of the cows and retained a duly perfected security interest in the 34 cows. The Bank obtained a subordination agreement respecting the security interest held by Beatrice National Bank in the cows and the Bank held a first priority security interest.

Between August, 1983 and August, 1986, two of the cows died and 32 were sold for a total of $15,279.05. Only $2,200.00 was paid to the Bank. The balance of these proceeds were deposited in a Linc–Side Farms account at Beatrice National Bank with the exception of one check that was cashed and used for living expenses and one check which was deposited in an escrow account at the Bank. The funds deposited with Beatrice National Bank were applied to the payment of debt due Beatrice National Bank, or withdrawn for the payment of living expenses and repairs or for the payment of expenses of Linc–Side Farms. The Bank did not consent to the sale of any of the cows and it did not discover that the cows had been sold until September, 1986, which was after their disposition. The sales were in violation of the terms of the Bank's security agreement.

The debtor, John Claassen and his brother Robert Claassen, are the only partners of Linc–Side Farms. The debtor and his brother have no farming operation other than the partnership.

There is no evidence that the sale of the subject cows was concealed or conducted in a manner other than in the ordinary course of the farming operations of Linc–Side Farms. Books and records were maintained concerning the subject cows. Milk production records were kept and records were made and maintained concerning the sale of the cows and the disposition of proceeds. Debtors have met their burden of accounting for property of the estate and the disposition of the cows and the proceeds thereof. There is no credible evidence that the proceeds from the cows were diverted for any purpose other than living and operating expenses and payments to Beatrice National Bank.

The debtor, John Claassen had an interest in $65,000.00 to $70,000.00 proceeds of a government dairy program. Under this program, the United States paid funds to dairy farmers for the termination of their dairy operation and the sale of their dairy herd. The debtor, John Claassen explained what happened to these funds. They were used to pay current debt of Linc–Side Farms, and for repairs and rent, including the remodeling of debtors' kitchen.

The record is completely devoid of any evidence as to the role or participation of debtor, Carol Claassen in any of these transactions. She was not a party to the agreement by which the Bank sold the subject cows to John Claassen, Robert Claas-

sen and Linc–Side Farms, nor was she a partner in Linc–Side Farms.

## CONCLUSIONS OF LAW

The legal issues in this case are:

1. Whether the obligation of John and Carol Claassen to the Bank are barred from discharge under 11 U.S.C. § 523(a)(4) or (6).

2. Whether the debtors, John and Carol Claassen are barred from a discharge on all debts under 11 U.S.C. § 727(a)(2), (3) or (5).

I conclude that debtors are not barred from discharge under §§ 523 or 727.

## EXCEPTIONS TO DISCHARGE UNDER § 523

■ Under § 523(a)(4), a discharge in bankruptcy does not include the discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity...." It has long been established, however, that the Code's reference to "fiduciary" applies only to trustees of express trusts. *In re Long*, 774 F.2d 875, 878 (8th Cir.1985). *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). To bar discharge of a debt under § 523(a)(4), the debtor must be a trustee in the "strict and narrow sense." *Davis*, 293 U.S. at 333, 55 S.Ct. at 153. Debtors herein were not express fiduciaries. It is not proper, therefore, to bar discharge under § 523(a)(4).

■ Under § 523(a)(6), a discharge under § 727 does not discharge an individual debtor from a debt "for willful and malicious injury by the debtor to another entity or property of another entity."

On the facts of this case, the debtor, John Claassen intentionally violated and breached the terms of a security agreement by selling collateral. The sale of collateral under some circumstances constitutes a Class IV Felony under Nebraska law. *See* Neb.Rev.Stat. § 69–109 (Reissue 1986). The conduct of John Claassen was thus wrongful, in breach of contract and possibly criminal. Yet, this conduct does not preclude discharge unless the court finds that the debtor's acts were "willful and malicious".

■ Willfulness and malice are separate and distinct elements of § 523(a)(6), which are to be analyzed separately in determining whether a debt is dischargeable. There is a consensus of opinion that "willful means intentional or deliberate." *See e.g., In re Long*, 774 F.2d at 880; *In the Matter of Morgan*, 22 B.R. 38, 39 (Bkrtcy.D.Neb. 1982). The element of "malice," however, is more troublesome. Some courts have held that the sale of collateral without the consent of the secured creditor constitutes a willful and malicious injury under § 523(a)(6). *See e.g., United Bank of Southgate v. Nelson*, 35 B.R. 766, 776 (Bkrtcy.N.D.Ill.1983); *In re Ries*, 22 B.R. 343, 346–47 (Bkrtcy.W.D.Wis.1982); *In re DeRosa*, 20 B.R. 307, 313 (Bkrtcy.S.D.N.Y. 1982). These courts interpret § 523(a)(6) as barring discharge through implied or constructive malice. If willful or reckless action results in harm to a creditor, these courts would deem the debtor's conduct malicious without a finding specific intent to cause harm.

Other cases, included the eighth circuit, have reasoned that the concept of malice entails more than mere willfulness or recklessness disregard of creditor's economic interests. In the eighth circuit, when the sale of collateral in violation of the terms of a security agreement is at issue, dischargeability depends on whether the debtor's conduct was "(1) headstrong and knowing ("willful") and (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm." *In re Long*, 774 F.2d at 881 (citing *Davis* 293 U.S. at 332–33, 55 S.Ct. at 153–54).

A heightened degree of culpability must be present, going beyond recklessness or an intentional violation of a security agreement. Upon this analysis and emphasis upon "malice," a debt resulting from the criminal conversion of collateral may not bar discharge because conversion under federal law requires only proof of willfulness and not malice. *See In re Vandrovec*, 61 B.R. 191, 14 B.C.D. 567 (Bkrtcy.D.N.D. 1986). Malice therefore involves more than

willful, reckless, or perhaps even criminal behavior.

On the facts of this case, there has been no showing that debtor's conduct in selling the collateral was targeted at the creditor or was certain or almost certain to cause financial harm. The sale of the collateral occurred over an extended period of time. The proceeds of sale were accounted for and the proceeds were not converted into exempt property. There is no evidence that the sale of the 32 cows was other than in the ordinary course of debtors' business. Although there was a willful conversion of the Bank's collateral, "a willful and malicious injury does not follow as of course from every act of conversion." *Davis,* 293 U.S. at 332, 55 S.Ct. at 153. Debtor's obligation to the Bank is not barred from discharge under § 523(a)(6).

BAR TO DISCHARGE UNDER § 727

■ Section 727(a)(2) bars discharge of all debts where the debtor, with intent to hinder, delay, or defraud a creditor, has transferred his property within one year of filing bankruptcy. On the facts of this case, however, I do not find that the debtor's transfer of the 32 cows was with the intent to hinder, delay or defraud the Bank. There is no evidence that the cows were sold other than in the ordinary course or at less than fair market value. There is no evidence that the debtor diverted the proceeds of sale or placed the proceeds into exempt property. The cows were sold over an extended period of time between August, 1983 and August, 1986. The debtors filed a Chapter 11 bankruptcy petition on November 6, 1986, and converted the case to Chapter 7 on January 11, 1987. Although there has been a sale of collateral without the consent of the secured party, I do not find that the debtors intended to thereby defraud the Bank.

■ Although the debtor knowingly and willfully sold the cows, there has been no showing of an actual intent to defraud on the part of the debtor. Further, because of the well developed decisional law under § 523 relating to the sale of collateral, I conclude that a bankruptcy court cannot infer fraudulent intent based solely on a debtor's action in selling collateral in violation of the security agreement. This necessarily follows from the decisional law under § 523(a)(6). If "malice" is required as a condition to barring discharge on an individual debt under § 523(a)(6) and malice cannot be inferred from the sale of collateral out of trust, it follows that the court cannot bar the debtors entire discharge under § 727(a)(2) by predicating its finding of intent to hinder and delay creditors solely on the fact that collateral was sold out of trust. Thus, I conclude that the sale of collateral in violation of the terms of a security agreement is not a "badge of fraud" under § 727(a)(2).

■ Under § 727(a)(3), a debtor may be barred from discharge if he has failed to maintain records from which his financial condition might be ascertained. Such a failure is not present in this case. Mr. Claassen maintained books and records relating to the subject cows. Records concerning milk production, the sale of the cows, and the distribution of proceeds, were all made and maintained by the debtors. There is no evidence that the debtors concealed the sale of the cows or conducted the sale in a manner other than in the ordinary course. Barring discharge under § 727(a)(3) is not appropriate in this case.

■ A discharge may be barred under § 727(a)(5), if the debtor fails to explain satisfactory any loss or deficiency of assets. Debtors in this case have met their burden of accounting for their assets. I find on the record that debtors' have accounted for the property of the estate, the sale of the cows, and the disposition of their proceeds. Although there was no detailed accounting, debtor's testimony as to the use and disposition of proceeds was not impeached. The debtors' discharge should not be barred under § 727(a)(5).

■ Finally, on the issue of differentiating between John and Carol Claassen, there is no evidence from which to infer that Carol Claassen was in any way culpably responsible for the sale of the cows out of trust. In fact, the record will not support any finding of fact as to Carol Claas-

sen's participation or involvement in any of the transactions or occurrences in this case. Therefore, she is not barred from discharge under either § 523 or § 727. *See generally, In re Lansford*, 822 F.2d 902, 904 (9th Cir.1987).

Based on the foregoing, the court finds that neither John Claassen nor Carol Claassen are to be barred from discharge under either § 523 or § 727.

A separate order will be entered consistent herewith.